**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| KIMBERLY SNYDER, | : | Case No. 3:11-cv-025 |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | | Magistrate Judge Michael J.  Newman |
| vs. | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF | | |
| SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY
FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND
REVERSED; AND (2) THE CASE BE REMANDED FOR AN AWARD OF IMMEDIATE
DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME
BENEFITS WITH AN ONSET DATE OF DECEMBER 31, 2001**

This is a Social Security appeal brought pursuant to 42 U.S.C. §§ 405(g),1383(c)(3).  At

issue is whether the Administrative Law Judge ("ALJ") erred in finding that Plaintiff Kimberly

Snyder ("Plaintiff") was "not disabled" and therefore unentitled to Supplemental Security Income

("SSI") and/or Disability Insurance Benefits ("DIB").  *See* Administrative Transcript ("Tr.") 793.

The case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the

Commissioner's Memorandum in Opposition (doc. 11), the Plaintiff's Reply (doc. 12), the

administrative record, and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

# I.  BACKGROUND

## A.  Procedural History

Plaintiff filed SSI and DIB applications on October 21, 2002, asserting she has been under a "disability" since December 31, 2001.  Tr. 79, 702.  Plaintiff claims she is disabled due to "chronic back pain, spinal stenosis, anxiety attacks, depression, P.M.D.D., [and] thyroid."  Tr. 109.

Following initial administrative denials of her application, Plaintiff received a hearing before ALJ Thomas McNichols, II on October 3, 2005.  Tr.710-41.  A supplemental hearing was held on June 12, 2006.  Tr. 742-74.  On August 23, 2006, the ALJ issued a written decision, concluding that Plaintiff was not disabled.   Tr. 19-39.

On December 7, 2007, the Appeals Council denied Plaintiff's request for review.  Tr. 8-11.  Plaintiff then appealed the Commissioner's non-disability finding to this Court.  *See* tr. 799-809.  The Court granted the Commissioner's motion to remand for further proceedings under Sentence Four of 42 U.S.C. § 405(g) and did not review the case on the merits.  *Id.*

On remand, a hearing was held before ALJ McNichols on April 22, 2010.  Tr. 1086-1121.  At the hearing, Plaintiff and vocational expert Charlotta Ewers testified.  *Id.*  On May 28, 2010, the ALJ issued a written decision, finding Plaintiff "not disabled" and therefore denying her SSI and DIB claims.[2]  Tr. 783-93.

Specifically, the ALJ's "Findings," which represent the rationale of his decision, were as follows:

_____

[2]The ALJ appears to have incorporated the reasoning of his 2006 decision into the analysis of his 2010 decision.  *See* tr. 789 ("The basis for adopting a limited sedentary RFC remains essentially the same as it was for the hearing decision issued previously in August 2006.").  Both parties concur in this analysis.  *See* doc. 8 at PAGEID 55; doc. 11 at PAGEID 88.  Accordingly, the Court refers, in this decision, to both the ALJ's 2006 and 2010 decisions.

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2006.

2.  The claimant has not engaged in substantial gainful activity since December 31, 2001, the alleged disability onset date (20 CFR 404.1571 *et seq*., and 416. 971, *et seq.*).

3.  The claimant has the following severe impairments: 1) chronic low back pain with residuals of two surgeries and a post-laminectomy syndrome; 2) intermittent left knee pain; and 3) anxiety with depression (20 CFR 404.1520(c) and 416.920 (c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416. 967(a) subject to: 1) the opportunity to alternate sitting and standing as needed; 2) occasional bending, squatting, stooping, kneeling, crouching, and crawling; 3) no repetitive twisting at the waist; 4) no climbing of ropes, ladders, or scaffolds; 5) no exposure to hazards; 6) no exposure to temperature extremes or humidity; 7) no exposure to vibrations; 8) simple one- or two-step tasks requiring little, if any, concentration; and 9) occasional exposure to the general public.[3]

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

---

[3]The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Sedentary work "involves lifting no more than 10 pounds at a time " and "a certain amount of walking and standing is often necessary." *Id.*§ 404.1567(a). Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing,￼ or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*§ 404.1567(b). Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds." *Id.*§ 404.1567(c). Heavy work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.*§ 404.1567(d). Very heavy work "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying objects weighing up to 50 pounds." *Id.*§ 404.1567(e).

7.      The claimant was born on February 24, 1962, and was 39 years old and defined as a "younger individual" on the alleged disability onset date. The claimant subsequently changed age category to a "younger individual in the age range of 45-49" (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Competent testimony of a vocational expert establishes that the claimant has no transferable job skills (See SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).

10.     Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under disability, as defined in the Social Security Act, from December 31, 2001, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 783-93.

The Appeals Council denied Plaintiff's request to review the ALJ's May 2010 decision, making the ALJ's non-disability finding the final administrative decision of the Commissioner. Tr. 775-77. Plaintiff then filed this appeal, arguing that the ALJ erred by: (1) rejecting her multiple treating physicians' opinions that she is unable to work; and (2) determining that she can perform other work available in the national economy. *See* doc. 8.

**B.      Plaintiff's Vocational Profile and Testimony**

Plaintiff was 39 years old on her alleged disability onset date, and thus considered a "younger individual." *See* 20 C.F.R. §§ 404.1563, 416.963. Plaintiff completed the ninth grade, but never obtained a GED. Tr. 115, 1091. Her only past relevant work is as a groundskeeper. Tr. 110, 1092.

Before the ALJ, Plaintiff testified that -- since December 2001 -- she has experienced pain in her lower back that radiates down her left leg. Tr. 1092, 1099. On a typical day, she rated her pain as a seven or eight out of ten. Tr. 1099. She also explained that the pain radiating into her left leg makes it difficult to walk. Tr. 1100. Although she is most comfortable lying down, Plaintiff testified, she still has difficulty sleeping. Tr. 1100-01.

Plaintiff testified that she has had two back surgeries -- in 2002 and 2004 -- but they did not provide any long-term pain relief. Tr. 1092-93. As for other treatment, Plaintiff testified that she has had injections, which only temporarily reduce the pain. Tr. 1093. Further, Plaintiff reported that she has seen a pain management specialist on-and-off since her back began hurting; but she had not seen him recently because she did not have any insurance coverage. Tr. 1094.

In addition to her back pain, Plaintiff testified that she has had left knee pain for six years. Tr. 1094-95, 1100. She reported that the knee pain occurs two to three times each month, rating it as a six out of ten. Tr. 1100. To treat her knee pain, Plaintiff has had arthritic surgery and has also received an injection in her knee. Tr. 1094-95.

Plaintiff testified that she has suffered from carpel tunnel syndrome for at least six years, estimating it causes her pain two or three times a week. Tr. 1102. As treatment, Plaintiff responded, she wears braces on both hands during most of the day and also takes medication. Tr. 1102-03.

Further, Plaintiff testified that she suffers from anxiety and depression. Tr. 1096. Consequently, she reported, she does not eat or shower on a regular basis; often has crying spells; and gets "very, very" nervous when she has to go outside. Tr. 1096. Plaintiff testified that while she had been going to counseling, she stopped once she lost her insurance benefits. Tr. 1096-97. Nonetheless, she reported that she sees a psychiatrist once a month. Tr. 1098.

Plaintiff estimated she could walk half a block; stand no longer than ten or fifteen minutes at one time; sit no longer than twenty minutes at one time; and lift no more than five to ten pounds. Tr. 1101-03. When asked whether she could perform sedentary work, she replied that she was unsure because after sitting for awhile, she has to stand up and walk around, or even lay down. Tr.1104. Plaintiff also explained that she cannot bend over to pick up an object up unless there is something to hold onto. Tr. 1108. As for household chores, Plaintiff responded, she washes dishes and does laundry, but does not do other cleaning; her roommate usually goes grocery shopping for her. Tr. 1104-05. Plaintiff also testified that she rarely leaves home. *See* tr. 1105-08. On a typical day, Plaintiff testified, she lies on the couch watching television. Tr. 1107.

## II.   APPLICABLE LAW

### A.      Substantial Evidence Standard

The Court's inquiry on appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Id.*

The second inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "[e]ven if supported by substantial evidence . . . a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen,* 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB or SSI, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423 (a) & (d), 1382c(a). The definition of the term "disability" is the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* A DIB and SSI claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1.  Has the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4.    Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

## III. ANALYSIS

As a preliminary note, Plaintiff's pertinent medical findings have been adequately summarized in the parties' briefs, *see* doc. 8, at PAGEID 44-53; doc. 11, at PAGEID 80-87, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

Plaintiff argues that the ALJ erred in two respects. First, she contends the ALJ ignored her multiple treating physicians' opinions that she is unable to work. *See* doc. 8 at PAGEID 53-59. Second, she asserts the ALJ's erroneously determined that -- based on his RFC finding -- there are jobs available in the national economy that Plaintiff can perform. *See id.* at PAGEID 59-61.

### A.    The ALJ Erred in Rejecting Plaintiff's Treating Physicians' Opinions

Plaintiff first contends that the ALJ erroneously discredited the opinions of her multiple treating sources -- Dr. Bennett, Dr. West, Dr. Rogers and Dr. Vitols.-- that she is disabled.[4] Plaintiff asserts that, contrary to the ALJ's findings, her treating physicians' opinions are supported by

---

[4] In her Statement of Errors, Plaintiff does not appear to argue that the ALJ erred by rejecting Dr. Rogers' opinion. *See* doc. 8 at PAGEID 53-59. Nonetheless, the Court will consider Dr. Rogers' opinion because it is relevant in evaluating Plaintiff's other treating physicians' opinions.

objective medical evidence and consistent with the record as a whole. Thus, Plaintiff argues, the ALJ violated the treating physician rule.

For the foregoing reasons, the Court agrees that the ALJ erred in not deferring to the opinions of Dr. Bennett, Dr. West, and Dr. Rogers, who unanimously agreed she is incapable of sustaining even a limited range of sedentary work on a regular and continuing basis.[5] The ALJ's decision should therefore be reversed.

### 1.     Treating Physician Rule

The treating physician rule "requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because:

> 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.'"

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). Thus, an ALJ must give controlling weight to a treating source if he or she finds the opinion well-supported by medically acceptable data and not inconsistent with other substantial

---

[5]However, the Court does not agree with Plaintiff's argument that Dr. Vitols' opinion was entitled to substantial weight. Dr. Vitols treated Plaintiff for degenerative joint disease in her left knee. *See* tr. 522-25. In September 2005, he opined that Plaintiff was unable to work. Tr. 601. However, one month later, Plaintiff underwent left knee arthroscopic surgery. Tr. 664. Therefore, Dr. Vitols' opinion does not take into account how she has improved since her surgery. Indeed, he noted, in July 2007, that her surgery was successful. Tr. 920.

evidence in the record. *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).[6]

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406 (citing 20 C.F.R. § 404.1527(d)(2)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 406-07 (citing SSR 96-2p, 1996 SSR LEXIS 9, at *12).

### 2. Treating Sources' Opinions

#### a. Barbara Bennett, D.O.

Barbara Bennett, D.O. has been Plaintiff's primary care physician since her alleged disability onset date. In her treatment notes, Dr. Bennett continuously documented Plaintiff's complaints of lower back pain beginning in December 2000 through March 2006. *See generally* tr. 602-48, 666-70. Based on a CT scan of Plaintiff's lumbar region in January 2001, Dr. Bennett noted that Plaintiff had bugling discs in her spine. Tr. 643, 646. Thus, in November 2001, Dr. Bennett referred Plaintiff to neurosurgeon Dr. West. *See* tr. 640. Dr. Bennett also noted that Plaintiff is seeing a pain

---

[6]If the ALJ decides that the treating physician's opinion is unentitled to *controlling* weight, the ALJ must apply the factors listed in 20 C.F.R. § 404.1527(d)(2) (length of treatment relationship and the frequency of the examination; the nature and extent of the treatment relationship; supportability of the opinion; consistency of the opinion with the record as a whole; and the specialization of the treating source) in determining what weight to give the opinion. *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009). In weighing these factors, there is a presumption that the treating physician's opinion is entitled to "great deference." *See id. See also* SSR 96-2p, 1996 SSR LEXIS 9, at *9-10 ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").

specialist, Dr. Rogers. *See* tr. 633, 635, 638. Throughout Plaintiff's treatment, Dr. West and Dr. Rogers kept Dr. Bennett informed of the nature and severity of Plaintiff's back condition, as well as any treatment she was undergoing. *See, e.g.*, tr. 360-74, 504-19.[7]

In June 2003, Dr. Bennett completed a functional capacity assessment form, where she opined that Plaintiff was unemployable and would remain so for twelve months or more. Tr. 307-08. Dr. Bennett reported that Plaintiff's ability to sit and stand/walk were affected (she did not provide more specific limits); she can lift or carry no more than five pounds, even on an occasional basis; and her ability to push/pull, bend, reach, handle, and perform repetitive foot movements were extremely limited. Tr. 308.

### b.    Scott West, D.O.

Neurosurgeon Scott West, D.O. initially evaluated Plaintiff in December 2001. Tr. 518. Upon physical examination, Dr. West noted that Plaintiff had a reduced range of motion and positive straight leg raises at 45 degrees bilaterally. *Id.* Dr. West found that an MRI of Plaintiff's lumbar region -- dated December 11, 2001 -- revealed spinal stenosis at the L4-5 level. Tr. 517. At that time, Dr. West recommended conservative treatment before resorting to surgery. Tr. 516-17.

However, in July 2002, after trying physical therapy and epidural blocks, Plaintiff reported that she continued to have intolerable pain in her low back and right leg. Tr. 514. Therefore, she informed Dr. West that she wanted to undergo surgery. *Id.* Accordingly, Dr. West ordered a lumbar myelogram CT scan, which demonstrated "significant nerve root filling defects at the L4-5 and the L5-6 levels primarily on the right" and disc bulging at the L4-5 and L5-6 levels. Tr. 215-31,

---

[7]The record contains many letters from Dr. West to Dr. Bennett informing her about Plaintiff's progress. Likewise, Dr. Bennett is copied on many letters from Dr. Rogers to Dr. West.

514.     Accordingly, in August 2002, Dr. West performed a microscopic lumbar laminectomy with discectomy at the L4-5 and the L5-6 levels on the right.  Tr. 513.  Initially, the surgery appeared to be successful in relieving Plaintiff's pain.  *Id.*  However, one month later, Plaintiff went to the emergency room for low back and leg pain.  *See* tr. 253-54.  Later that month, Plaintiff had another MRI of her lumbar spine, which showed disc desiccation at the L3-4 levels, with diffuse end-plate spurring appearing to somewhat efface the thecal sac; narrowing of the bilateral lateral recesses with at least mild foraminal stenosis; diffuse bulge/protusion at the L4-5 levels; and some scar tissue on the right at the level of the L-5 root  Tr. 259-60.

In October 2002, Plaintiff saw Dr. West and reported that she continued to experience pain in her low back and legs.  Tr. 512.  Dr. West viewed her September 2002 MRI and noted post-operation changes, diagnosing her with post-laminectomy syndrome.  *Id.*

In January 2004, Dr. West re-evaluated Plaintiff.  He noted that Plaintiff continued to experience low back pain with radiation into her left leg, sometimes leading to paresthesias of the entire left leg.  Tr. 508.  Dr. West recognized that to alleviate her pain, Plaintiff had been trying epidural blocks and medications -- Vicodin, Neurontin, and Topamax -- to no avail.  *See id.*  Upon a physical examination, Dr. West determined that her range of motion was reduced -- flexion was limited to 45 degrees; and side bending limited to 10 degrees bilaterally.  *Id.*  Further, he found some sensory deficits in her left calf, and positive straight leg testing at 60 degrees on the right and 40 degrees on the left.  *Id.*  Moreover, Dr. West reviewed Plaintiff's most recent MRI of her lumbar spine, *see* tr. 321, finding degenerative disc disease at the L3-4 and L4-5 levels, as well as an indication of recurrent disc herniation or synoival cyst at the L4-5 level on the  right. Tr. 509.  At

that time, Dr. West recommended Plaintiff continue conservative treatment before resorting to a second surgery, as it only had a 50/50 success rate in his opinion. *Id.*

One month later, Plaintiff saw Dr. West again and informed him that due to her severe pain, she wanted to proceed with the surgery despite the 50/50 chance of improvement. Tr. 507. Therefore, Dr. West performed a two-level pedicle screw fixation at the L3-4 and L4-5 levels on April 15, 2004. Tr. 506. At first, the surgery appeared to be successful. *See* tr. 504-05. Nonetheless, by July 2004, Plaintiff reported to Dr. West that she was experiencing back pain again. Tr. 537. In October 2004, Plaintiff was still complaining of lower back pain. *See* tr. 536. Accordingly, Dr. West ordered a MRI of Plaintiff's lumbar region. Tr. 535-36. The October 8, 2004 MRI revealed "enhancing scar tissue in the left lateral recess at L4-5 effacing the left L5 nerve root"; "disc bulging at L2-3, which effaces the thecal sac and likely the right, greater than left L3 nerve roots"; and "disc bulging at L5-S1 which contacts the bilateral S1 nerve roots." Tr. 526. Dr. West reviewed Plaintiff's MRI and concluded that there were no other surgical procedures to help her pain. Tr. 535. Thus, Dr. West recommended Plaintiff continue seeing the pain management physician, Dr. Rogers. *Id.*

Dr. West documented his opinion that Plaintiff was disabled on two occasions. He first opined she was unable to perform full-time work in a Basic Medical Form completed in July 2004, three months after her second surgery. Tr. 538-39. There, he reported that Plaintiff can neither stand/walk or sit for longer than two hours in an 8-hour workday, and less than fifteen minutes without interruption. Tr. 539. In addition, he opined Plaintiff could not lift or carry more than five pounds, even occasionally. *Id.* Dr. West also reported Plaintiff was extremely limited in her ability to push/pull, bend, and perform repetitive foot movements; and markedly limited in her ability to

13

reach and handle.  *Id.*  Thus, Dr. West opined, Plaintiff was unemployable for twelve months or more.  *Id.*

In March 2005, in response to interrogatories sent by the Social Security Administration, Dr. West opined that Plaintiff is totally disabled.  Tr. 533.  He explained, "Given the fact that the patient has undergone two prior back surgeries, including a lumbar fusion both by myself, I am very hesitant to say that she can return to work rather, I feel she is totally disabled."  Tr. 531.

### c.        Jeffrey Rogers, D.O.

Dr. West referred Plaintiff to Dr. Rogers, a pain management specialist, in February 2002.  Dr. Rogers reviewed Plaintiff's CAT scan, finding spinal stenosis and spondylosis of the lumbar spine, especially significant at the L3-4 level.  Tr. 374.   Between then and June 2002, Dr. Rogers treated Plaintiff with a series of lumbar epidural steroid injections, followed by a series of right sacroiliac joint injections.  Tr. 368.  However, Plaintiff reported that she continued to have pain, rating it as a seven on a ten-point scale.  Tr. 368-69.

In July 2003, Dr. Rogers had a follow-up visit with Plaintiff.  Because Plaintiff continued to report low back pain, Dr. Rogers ordered an MRI of Plaintiff's lumbar spine.  Tr. 366.  Dr. Rogers found that the MRI revealed epidural fibrosis surrounding the L4-5 nerve root.  Tr. 365.  Thus, he treated her with a series of caudal epidural steroid injections.  Tr. 365.  In a follow-up visit less than six months later, Dr. Rogers noted that Plaintiff continued to complain of severe pain.  Tr. 360.

From November 2005 through January 2006, Dr. Rogers treated Plaintiff with a series of transforaminal nerve blocks.  Tr. 701, 847, 858, 870.  Further, in 2006, Dr. Rogers prescribed Vicodin. Tr. 700-01.

In March 2005, in response to interrogatories, Dr. Rogers opined that Plaintiff cannot complete a normal work schedule without interruption from psychologically and /or physically based symptoms. Tr. 586. Dr. Rogers further determined that Plaintiff had marked restrictions in daily living; marked difficulties in maintaining social functioning; and marked deficiencies of concentration, persistence or pace, resulting in a failure to complete tasks in a timely manner. Tr. 587.

### 3.    The ALJ's Decision

In finding that Plaintiff is capable of performing a reduced range of sedentary work, the ALJ did not defer to the opinions of Dr. Bennett, Dr. West, and Dr. Rogers. In his 2010 decision, the ALJ did not provide an analysis for why he was disregarding Plaintiff's treating physicians' opinions. Rather, he stated, "The basis for adopting a limited sedentary RFC remains essentially the same as it was for the hearing decision issued previously in August 2006." Tr. 789. In his 2006 decision, the ALJ rejected the opinions of Dr. Bennett, Dr. West and Dr. Rogers on the grounds that they were "neither well-supported by medically-acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record." Tr. 35.

Instead, the ALJ accepted the opinion of Richard Sheridan, M.D., who, at the request of the Bureau of Disability Determination ("BDD"), reviewed Plaintiff's medical records and conducted one physical examination of Plaintiff in December 2005. *See* tr. 649-63. Dr. Sheridan reported that Plaintiff cannot lift more than ten pounds frequently; and can neither sit or stand/walk for longer than one hour without interruption and six hours total in one work day. Tr. 661. Thus, Dr. Sheridan opined that Plaintiff is capable of sedentary work. Tr. 656.

In addition, the ALJ relied on the opinion of Richard Hudson, M.D., a medical expert who testified at the June 2006 hearing. Tr. 760-66. Having reviewed Plaintiff's medical records, Dr. Hudson opined that Plaintiff is capable of performing a reduced range of sedentary work. Tr. 762. Specifically, he testified, Plaintiff needs a sit/stand option (five minutes every hour); she cannot work with ladders, ropes, or scaffolds; cannot be exposed to cold, heat, wetness, humidity, vibration, heights or hazardous areas; and can do just occasional trunk twisting. Tr. 762-63.

### 4. The ALJ Erred in Not Giving Controlling Weight to Dr. West's Finding of Disability

The ALJ erred in not giving controlling weight to Dr. West, Plaintiff's treating neurosurgeon, because the ALJ ignored the overwhelming objective medical evidence supporting Dr. West's opinion and also failed to realize the consistency of his opinion with the record as a whole. Further, the conflicting opinions of the state-reviewing doctors and medical expert do not amount to substantial evidence to allow the ALJ to reject Dr. West's opinion.

Specifically, the ALJ rejected Dr. West's opinion because "no signs or findings were provided" on the basic medical form itself. Tr. 35. However, as Plaintiff correctly points out, Dr. West wrote, "see enclosures," indicating that he was including supporting records. Tr. 538. As recounted above, there is ample objective medical evidence in the record supporting Dr. West's disability finding. While treating Plaintiff, Dr. West conducted physical examinations of Plaintiff, including range of motion assessments and straight leg raises. *See, e.g.,* tr. 508, 518. Moreover, in treating Plaintiff, Dr. West ordered and reviewed multiple MRIs and CT scans showing Plaintiff's serious spinal impairments, such as spinal stenosis, disc desiccation, diffuse end-plate spurring, disc bulging, scar tissue, post-laminectomy syndrome, and degenerative disc disease. *See, e.g.,* tr. 221-22, 321, 509, 512, 514, 517, 526, 535, 591-92.

16

Further, Dr. West's opinion is based on his observations while performing surgery on Plaintiff's spine. After Plaintiff's first surgery in 2002, Dr. West diagnosed Plaintiff with a herniated lumbar disc at the L4-5 and L5-6 levels on the right side. Tr. 235-37. Similarly, in performing the second surgery, Dr. West noted that Plaintiff had marked degenerative disc disease and foraminal stenosis at multiple levels. Tr. 393-95. Following that surgery, Dr. West diagnosed Plaintiff with degenerative disc disease and post laminectomy syndrome. Tr. 392.

Thus, in light of the overwhelming objective medical evidence and clinical findings supporting Dr. West's medical opinion, the Court finds the ALJ's decision -- to not give controlling weight to that opinion -- to be unsupported by substantial evidence. The ALJ erred by "substitut[ing] his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009).

### 5. The ALJ Failed to Apply the Factors in Determining What Weight to Give the Disability Findings of Dr. Bennett and Dr. Rogers

In determining what weight to give the disability findings of Dr. Bennett and Dr. Rogers, the ALJ failed to consider the factors required under 20 C.F.R. § 404.1527(d)(2): "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Bowen*, 478 F.3d at 747. In weighing these factors, there is a presumption that the treating physician's opinion is entitled to "great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (citation omitted).

The ALJ failed to weigh the applicable factors before disregarding Dr. Bennett's opinion. Dr. Bennett has been Plaintiff's primary care physician during the entire alleged disability period

and the record contains over eighty treatment notes spanning from December 29, 2000 through March 13, 2006. *See* tr. 602-48, 666-70. Dr. Bennett had the most comprehensive knowledge of Plaintiff's impairments because Plaintiff's various treatment specialists kept Dr. Bennet fully apprised of Plaintiff's condition and treatment. *See, e.g.*, tr. 360-74, 504-19. Further, Dr. Bennett's opinion is consistent with the clinical findings of Dr. West and Dr. Rogers. Accordingly, the ALJ should have accorded substantial weight to Dr. Bennett's opinion.

Likewise, the ALJ failed to properly weigh the factors as to Dr. Rogers' opinion. Dr. Rogers treated Plaintiff for her back pain from February 2002 though May 2006. *See generally* tr. 358-84, 700-01, 847, 858, 870. Moreover, Dr. Rogers' opinion is supported by objective medical evidence. In his initial evaluation of Plaintiff, he reviewed Plaintiff's CAT scan, finding spinal stenosis and spondylosis of the lumbar spine. Tr. 374. One-and-a-half years later, Dr. Rogers ordered an MRI, which revealed epidural fibrosis surrounding the L4-5 nerve root. Tr. 365-66. Finally, as noted above, Dr. Rogers' opinion is consistent with the clinical findings of Dr. West. Therefore, the ALJ erred in not giving any weight to Dr. Rogers' opinion without balancing the factors.

In sum, even if the ALJ determined that Plaintiffs' treating physicians were unentitled to controlling weight, the ALJ was required to weigh the relevant factors to determine what weight to

give their opinions. *Cole v. Astrue*, 652 F.3d 653, 659-61 (6th Cir. 2011). The ALJ, however, failed to conduct any such analysis.[8]

### 6. Reversal is Warranted

Having concluded that the ALJ committed error in not giving controlling or substantial weight to Plaintiff's treating physicians, the Court finds that reversal of the ALJ's decision is warranted. In determining Plaintiff's RFC, the ALJ did not accept Dr. West's assessment of Plaintiff's physical limitations. Tr. 539. For example, had the ALJ accepted Dr. West's opinion that Plaintiff is limited to standing, sitting, and walking a maximum of four hours per day, the Vocational Expert testified that there are no full-time jobs available to Plaintiff. *See* tr. 1119. Thus, the ALJ committed reversible error in finding that Plaintiff can perform a reduced range of sedentary work, without regard to the contrary opinion of Dr. West, as well as Plaintiff's other treating physicians.[9]

---

[8] Moreover, the ALJ did not balance these factors in evaluating how much weight to give to state consulting physician, Dr. Sheridan, and testifying medical expert, Dr. Hudson, as required under 20 C.F.R. §§ 404.1527(d), (f). *See* tr. 32-37, 789-91. Notably, the ALJ neither considered how their opinions differed significantly from the objective medical evidence and clinical findings of Dr. West and Dr. Rogers, nor the extremely limited nature of their treatment relationship with Plaintiff. Therefore, the ALJ erred by giving more weight to one-time-examining Dr. Sheridan, and non-examining Dr. Hudson, than to Plaintiff's treaters. *See Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985); *see also Sherrill v. Sec'y of Health & Human Servs.*, 757 F.2d 803, 805 (6th Cir. 1985).

[9] Because the Court finds that the ALJ erroneously determined that Plaintiff was not "disabled," Plaintiff's second assignment of error is moot. Nonetheless, the Court will briefly address it.

In her second assignment of error, Plaintiff contends the ALJ's step five finding was unsupported by substantial evidence. Doc. 8 at PAGEID 59-61. Specifically, she maintains the Vocational Expert's ("VE") testimony that a sedentary job would allow Plaintiff to sit or stand at-will is contrary to Social Security Ruling 83-12, 1983 SSR LEXIS 32, which provides that unskilled sedentary work is typically not structured so that workers can alternate between sitting and standing at-will.

Regardless of any inconsistencies, Plaintiff's argument fails. The ALJ may rely on the VE's testimony that there are a significant number of jobs available to the claimant, as long as the VE's testimony is in response to an accurate hypothetical regarding the claimant's limitations. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). Therefore, assuming *arguendo* that the ALJ's hypothetical was accurate, the VE's testimony constituted substantial evidence that Plaintiff can perform those jobs. *See Howard v. Comm'r*

## B.     Remand and an Award of Benefits Are Warranted

When, as here, the non-disability determination is unsupported by substantial evidence, the

Court must decide whether to reverse and remand the matter for rehearing, or to reverse and order

benefits granted.  The Court has authority to affirm, modify or reverse the Commissioner's decision

"with or without remanding the cause for rehearing."  42 U.S.C. § 405(g); *Melkonyan v. Sullivan*,

501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have

been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher*

*v. Sec'y of Heath & Human Servs.*, 17 F.3d 171, 176 (6th Cir 1994).  However, the Court may award

benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that

remand would merely involve the presentation of cumulative evidence, or where the proof of

disability is overwhelming.  *Mowery v. Heckle*r, 772 F.2d 966, 973 (6th Cir. 1985).

Such is the case here.  As recounted herein, proof of disability is great and remand will serve

no purpose other than delay  Plaintiff's disability claim, which was filed in October 2002, more than

nine years ago.  Tr. 792.  All substantial factual issues have been resolved, and the record reflects

---

*of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002)

Further, Plaintiff argues that the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT").  She asserts that the DOT descriptions of the jobs identified by the VE did not comply with the ALJ's RFC limitation:  that Plaintiff only perform "simple one- or two-step tasks requiring little, if any, concentration."  *Id.* at PAGEID 59-60.

This argument is without merit because the VE is not required to follow the DOT.  *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003).  In addition, because Plaintiff's counsel did not notify the ALJ of any conflicts between the VE's testimony and the DOT, *see* tr. 1113-19, the ALJ fulfilled his duties by asking the VE whether he saw "any evidence that conflict[ed] with the [DOT]." Tr. 1113. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).  Therefore, Plaintiff's second assignment of error is not well taken.

that Plaintiff is "disabled." In light of the medical evidence, proof of disability is overwhelming. Moreover, the ALJ already had a second opportunity to cure his error and give proper weight to Plaintiff's treating sources, but he failed to do so.

## IV. RECOMMENDATION

For the foregoing reasons, Plaintiff's first assignment of error is well taken. The Court finds that the ALJ's decision is unsupported by substantial evidence, and recommends that it be reversed. The Court also recommends that this case be remanded for an immediate award of benefits as the record overwhelmingly establishes Plaintiff's entitlement to such benefits as of December 31, 2001, her alleged disability onset date.

**IT IS THEREFORE RECOMMENDED THAT:**

1.   The Commissioner's non-disability finding be found **UNSUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED;** and

2.   This case be **REMANDED FOR AN AWARD OF IMMEDIATE DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME BENEFITS WITH AN ONSET DATE OF DECEMBER 31, 2001.**

January 9, 2012                                        s/ **Michael J. Newman**
                                                       United States Magistrate Judge

**<u>NOTICE REGARDING OBJECTIONS</u>**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).