KIMBERLY SNYDER,

               Plaintiff,          Case No. 3:11-cv-025

vs.                            Judge Thomas M. Rose

MICHAEL J. ASTRUE,        Magistrate Judge Michael J. Newman
Commissioner of Social Security,

               Defendant.

---

### ENTRY AND ORDER AFFIRMING THE COMMISSIONER'S DECISION THAT SNYDER IS NOT ENTITLED TO SOCIAL SECURITY DISABILITY BENEFITS; OVERRULING THE COMMISSIONER'S OBJECTIONS (Doc. #14) TO THE REPORT AND RECOMMENDATIONS; OVERRULING SNYDER'S OBJECTIONS (Doc. #16) TO THE SUPPLEMENTAL REPORT AND RECOMMENDATIONS AND TERMINATING THIS CASE

---

This matter is now before this Court for the second time. Plaintiff Kimberly Snyder ("Snyder") brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the second decision of the Defendant Commissioner of Social Security (the "Commissioner") that she was not disabled and, therefore, not entitled to Social Security disability benefits.

Snyder filed Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") applications on October 21, 2002, asserting that she has been under a disability since December 31, 2001. She claims she is disabled due to chronic back pain, spinal stenosis, anxiety attacks, depression, P.M.D.D. and thyroid.

Following administrative denials of her applications and subsequent administrative

appeal, Administrative Law Judge Thomas McNichols, II ("ALJ McNichols") conducted a hearing and a supplemental hearing. On August 23, 2006, ALJ McNichols issued a written decision that Snyder was not disabled.

Snyder then appealed ALJ McNichols' decision that she was not disabled to this Court. Next, the Commissioner moved the Court to enter judgment in favor of Snyder and to remand the matter for further administrative proceedings. Snyder objected to this Motion arguing that remand was not necessary and benefits should be awarded.

Magistrate Judge Merz entered a Report and Recommendations in which he recognized the Commissioner's Motion To Remand and found that the Vocational Expert's testimony was inconsistent with Social Security Ruling 96-9p, 1006 WL 374185. He specifically found that the record is not clear as to whether there is a significant number of jobs available to an individual with the residual functional capacity for sedentary work as well as with the additional limitations which ALJ McNichols identified. *Snyder v. Commissioner*, No. 3:08-cv-014, doc. #11. Snyder objected to this Report and Recommendations arguing that reversal and an award of benefits, rather than remand, was the appropriate remedy. *Id.* at docs. #12 and 13.

District Judge Walter Herbert Rice then adopted Magistrate Judge Merz's Report and Recommendations. *Id.* at doc. #14. In so doing, he overruled Snyder's objections. Judge Rice found that, "[t]he factual issue yet to be resolved is whether this Plaintiff, with her [sic] constellation of physical issues, is disabled from gainful employment within the unskilled sedentary occupational base." *Id.* Judge Rice remanded the matter to the Commissioner "to determine, with the assistance of a Vocational Expert, whether there is a significant number of jobs available to an individual with a residual functional capacity for sedentary work, with the

additional limitations of this Plaintiff as previously identified. Specifically, the Defendant

Commissioner is directed to follow Social Security Ruling 96-9p in determining anew whether

Plaintiff is disabled within the meaning of the Social Security Act, and, therefore, entitled to

benefits under the Act."[1]

On remand, a hearing was conducted by ALJ McNichols in April 22, 2010. At this

hearing, Snyder and vocational expert Charlotta Ewers testified. On May 28, 2010, ALJ

McNichols issued a written decision again finding that Snyder was not disabled.

The Appeals Council denied Snyder's request to review ALJ McNichols' May 2010

decision making it the final decision of the Commissioner. Snyder then brought this action

pursuant to 42 U.S.C. § 405(g) for judicial review of the second decision of the Commissioner

that she was not disabled and, therefore, not entitled to Social Security disability benefits. Snyder

now argues that the ALJ erred by (1) rejecting her multiple treating physicians' opinions that she

is unable to work and by (2) determining that she can perform other work available in the

national economy.

On January 9, 2012, Magistrate Judge Michael J. Newman issued a Report and

Recommendations finding that ALJ McNichols' decision to not give controlling weight to the

opinion of Dr. Scott West was unsupported by substantial evidence and that ALJ McNichols

erred as a matter of law by failing to weigh the applicable factors in determining what weight to

give the disability findings of Dr. Barbara Bennett and Dr. Jeffrey Rogers. Finally, in his initial

Report and Recommendations, Magistrate Judge Newman recommends that SSI and DIB

---

[1]The Magistrate Judge states in his Report and Recommendations that the
Commissioner's Motion To Remand was granted and the case was not reviewed on the merits.

benefits be awarded to Snyder.

On January 19, 2012, the Commissioner objected to Magistrate Judge Newman's first Report and Recommendation. (Doc. #14.) The Commissioner did not object to the reversal recommendation but did object to an award of benefits.

Before the time had run for Snyder to respond to the Commissioner's objection, Magistrate Newman issued a Supplemental Report and Recommendation. Therein, he recommends that the Commissioner's non-disability finding be found unsupported by substantial evidence and that this matter be remanded to the Commissioner for proceedings consistent with the Report and Recommendations.

On February 9, 2012, Snyder objected to the Supplemental Report and Recommendations. (Doc. #16.) Snyder does not object to the Magistrate Judge's conclusion that the Commissioner's non-disability finding is not supported by substantial evidence. Rather, Snyder objects to the remand for further consideration and argues that she should be awarded benefits.

The time has run and the Commissioner has not responded to Snyder's Objections to the Supplemental Report and Recommendations. Therefore, this matter is now ripe for decision.

## RELEVANT LEGAL PROVISIONS

This Court's function is to determine whether the record as a whole contains substantial evidence to support the ALJ's decision. *Bowen v. Commissioner of Social Security*, 478 F.3d 742, 745-46 (6th Cir. 2007). This Court must also determine whether the ALJ applied the correct legal criteria. *Id.*

Regarding the substantial evidence requirement, the ALJ's findings must be affirmed if

they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citing *Consolidated Edison Company of New York v. NLRB*, 305 U.S. 197, 229 (1938)); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law) against the ALJ/Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling and Stamping Company*, 306 U.S. 292, 300 (1939).

The second judicial inquiry - reviewing the ALJ's legal criteria - may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F.3d at 746. A reversal based on the ALJ's legal criteria may occur, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746(citing in part *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## BACKGROUND

Snyder was thirty-nine years old at the date her alleged disability began. She has a ninth grade education. She worked in the past as a cashier/clerk, housecleaner and groundskeeper.

Snyder's primary problem is back pain. Her back began to bother her in 2000. She was referred by Dr. Bennett, her family physician, to Dr. West, a neurosurgeon. Dr. West performed two back surgeries, a lumbar laminectomy on August 15, 2002, and the second, a two-level fusion, on April 15, 2004.

Snyder did well initially following both surgeries. By October 2004, however, she reported pain in her buttocks region. Following an MRI, Dr. West did not feel that there was any further surgical procedure that he could offer and felt that Snyder should continue seeing Dr. Rogers for pain management.

In addition to low back problems, Snyder began experiencing bilateral knee pain. She was evaluated by Dr. Aivars Vitols, an orthopedic surgeon, on August 16, 2004. Following unsuccessful injections, on November 1, 2005, Dr. Vitols performed arthroscopic surgery on her left knee.

Snyder also has emotional problems. Consultative psychologist Dr. Ty Payne examined her on January 27, 2003, and diagnosed major depression, recurrent and a panic disorder. She was evaluated at Samaritan Behavioral Health Center on August 20, 2003, where she was diagnosed with a major depressive disorder, recurrent, moderate and a post-traumatic stress disorder. Counseling was recommended so Snyder saw a counselor and psychiatrist at Samaritan through at least March of 2005.

At the time of hearing, Snyder testified that she continued to see her counselor and psychiatrist. She also testified that she continued to experience low back pain and continued to have problems with her knees.

**ANALYSIS**

The analysis begins with an assessment of whether the Commissioner followed the directions in Judge Rice's remand Order. Judge Rice specifically directed the Commissioner to determine, with the assistance of a Vocational Expert, whether there is a significant number of jobs available to an individual with a residual functional capacity for sedentary work and with

the additional limitations of Snyder as previously identified.

At the June 12, 2006 hearing, prior to the first appeal, ALJ McNichols asked William Braunig, the Vocational Expert, to assume a hypothetical claimant of the same approximate age, education, work experience as Snyder and to assume a Residual Functional Capacity ("RFC") for sedentary work with the following limitations: no climbing of ropes, ladders or scaffolding; occasional postural activities, no repetitive twisting at the waist; no exposure to extremes of hot, cold or humidity; no exposure to hazards or vibrations; a restriction to simple one- or two-step tasks; the opportunity to alternate between sitting and standing as needed; and no exposure or direct dealings with the general public. (Administrative Record ("AR") 768-770.) The Vocational Expert responded that there would be approximately 2500 positions in the regional economy. (Id.)

At the April 22, 2010 hearing following the judicial remand, ALJ McNichols asked Charoltta Ewers, the Vocational Expert at that hearing, to assume a hypothetical claimant of the same approximate age, education and work experience as Snyder to assume a RFC for sedentary work with the following limitations: no climbing of ropes, ladders, or scaffolds; occasional bending, squatting, stooping, kneeling, crouching and crawling; no exposure to extremes of hot, cold or humidity; no exposure to hazards such as dangerous machinery or unprotected heights or vibrations; a restriction to simple one- or two-step tasks requiring little if any concentration; no repetitive twisting at the waist, the opportunity to alternate between sitting and standing as needed; and occasional exposure to the general public. (Id. at 1111-1112.) These are essentially the same as the limitations used the first time with the exception that no exposure or direct dealings with the general public is replaced by occasional exposure to the general public.

The Vocational Expert responded that there would be approximately 7000 positions in the regional economy. (Id.) Snyder's attorney then asked the Vocational Expert if the number of jobs available would change if the restriction was changed to **no** bending, squatting, stooping, kneeling and **no** public. (Id. at 1114.) The Vocational Expert responded that the number of available jobs would be reduced to 3500. (Id.)

On May 28, 2010, ALJ McNichols issued a written decision finding that Snyder was not disabled. He found that, given all of the factors that he identified at the hearing, Snyder was capable of performing 7,000 unskilled jobs in the local economy. (Id. at 792.) He also found that 3,500 jobs would remain if stooping and exposure to the public were totally restricted, although he believed it would be absurd to think that an individual such as Snyder would never do any stooping at all in carrying out routine activities of daily living. (Id.) ALJ McNichols concluded that, "while SSR 96-9p may indicate that a total ban on stooping ordinarily represents a significant erosion of a sedentary occupational base, the particularized testimony of the vocational expert establishes that a significant number (3,500) of jobs would remain even if the claimant could do no stooping as a part of regular job duties." (Id. at 793.) ALJ McNichols went on to find that Snyder was not disabled under the Social Security Act. (Id.)

Thus, as directed by Judge Rice, ALJ McNichols determined whether there is a significant number of jobs available to an individual with a residual functional capacity for sedentary work, with the additional limitations of Snyder as previously identified. Also, Snyder's counsel had the opportunity to add additional limitations and did so. Yet, even with the added limitations, significant jobs still remained in the regional economy.

The Commissioner has satisfied Judge Rice's remand Order. However, a review of the

record and Snyder's objections raise a question of whether there is substantial evidence that Snyder could perform sedentary work and whether there is substantial evidence that the limitations used by ALJ McNichols for his May 2010 decision should have been used.

## Sedentary Work

Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." Id. "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Id.

## Lifting Ability

The "sedentary work" issue raised by the record includes whether Snyder can lift up to 10 pounds at a time. If she cannot, she cannot perform sedentary work.

On June 3, 2003, Dr. Bennett, Snyder's primary care physician, indicated that Snyder could lift up to 5 pounds. (AR 308.) Dr. Bennet had been treating Snyder since her alleged disability onset date of December 31, 2001.

On July 14, 2004, Dr. West, Snyder's treating neurosurgeon, indicated that Snyder could lift up to 5 pounds. (Id. at 539.) Dr. West treated Snyder from December 5, 2001, to October 13, 2004, and performed two back surgeries, including a lumbar fusion, on her during that time. (Id. at 531-34.)

On September 5, 2005, Dr. Vitols, Snyder's treating orthopedic surgeon, indicated that Snyder could lift 5 pounds for short periods and 2.3 pounds frequently. (Id. at 598.) Dr. Vitols

also indicated that Snyder did not have the residual functional capacity on a sustained basis to lift 10 pounds maximum. (Id.)

On October 3, 2005, Snyder testified as to her lifting capacity. (Id. at 728.) When asked how much she could lift, she responded "about 5 pounds." (Id.) On June 12, 2006, when asked how much she could lift, Snyder responded "ten pounds maybe, five, ten pounds." (Id. at 756.) On April 22, 2010, when asked how much she could lift using both arms and hands, Snyder responded "five to ten pounds."[2] (Id. at 1103.)

On December 20, 2005, Dr. Richard Sheridan, an orthopedic surgeon, performed an Independent Medical Examination of Snyder at the request of ALJ McNichols. (Id. at 649-663.) Manual muscle testing was full (5/5) throughout the upper and lower extremities. (Id. at 657.) Snyder's ability to grasp, manipulate, pinch and perform fine coordination was normal. (Id.) Dr. Sheridan reported dynamometer readings of 17 to 19 on the right side and 16 to 19 on the left side. (Id.) He concluded that Snyder could perform sedentary work and found that she could carry 10 pounds maximum and frequently. (Id. at 661.)

On June 12, 2006, Dr. Richard Hutson, the orthopedic Medical Expert, testified at Snyder's supplemental hearing. (Id. at 760-66.) He indicated that he had reviewed Snyder's medical records. (Id.) Dr. Hutson opined that Snyder "could do no more than sedentary work." (Id. at 762.) The transcript of Dr. Hutson's testimony includes no discussion of Snyder's lifting capacity.

ALJ McNichols concluded that Snyder could lift 10 pounds. This conclusion is supported

---

[2]In his August 23, 2006 Order, ALJ McNichols indicates that Snyder said she could lift five (5) to ten (10) pounds.

by substantial evidence. Dr. Sheridan conducted the most recent orthopedic examination of Snyder and performed extensive medical testing. He concluded that Snyder could lift ten pounds and could perform sedentary work. This conclusion is also supported by Dr. Hutson's testimony, which is based on a review of Snyder's medical records. Further, there is no evidence of medical testing or other clinical findings to support Drs. Bennett's, West's and Vitols' conclusions that Snyder could not lift more than 5 pounds. Snyder herself thought she could lift up to 10 pounds.

**Sitting Ability**

A second issue regarding sedentary work is whether Snyder is able to sit except for an occasional amount of walking and standing. If she cannot sit and/or walk and/or stand for an entire 8-hour workday, she cannot perform sedentary work.

On June 3, 2003, Dr. Bennett indicated that Snyder's physical functions of sitting, standing and walking were affected. (Id. at 308.) However, Dr. Bennett does not indicate the number of hours in a workday that Snyder could sit, walk or stand. (Id.)

On July 14, 2004, Dr. West indicated that Snyder could stand/walk for 2 hours in an 8-hour workday and could sit for 2 hours in an 8-hour workday. (Id. at 539.) From this, one could conclude that Snyder could not sit, stand and/or walk for 4 hours in an 8-hour workday.

On September 5, 2005, Dr. Vitols indicated that Snyder could stand and walk for 3 hours during an 8-hour workday and that Snyder could sit for 3 hours during an 8-hour workday. (Id. at 598.) From this, one could conclude that Snyder could not sit, stand and/or walk for 2 hours in an 8-hour workday.

On October 3, 2005, Snyder testified that she could walk about one-half block, stand for about 5 minutes and sit for not more than 30 minutes. (Id. at 728.) She also testified that she

could not sit long enough to do a job where she would be sitting most of the time. (Id.) On June 12, 2006, Snyder gave essentially the same testimony regarding sitting, standing and walking. (Id. at 755.) On April 22, 2010, Snyder testified that she could walk about half a block, could stand for 10 or 15 minutes and sit for 20 minutes. (Id. at 1101.)

On December 20, 2005, Dr. Sheridan performed an extensive orthopedic Independent Medical Examination of Snyder, at the request of ALJ McNichols. (Id. at 649-663.) Based upon this examination, Dr. Sheridan indicated that Snyder could stand and/or walk for 6 hours in an 8-hour day and could sit for 6 hours in an 8-hour day. (Id. at 661.) He also indicated that Snyder could stand and/or walk for 1 hour without interruption and sit for 1 hour without interruption. (Id.) He identified no specific medical findings that support these specific assessments but includes a description of the results of the various tests that he performed. (Id. at 649-63.)

On June 12, 2006, Dr. Hutson testified at Snyder's supplemental hearing. (Id. at 760-66.) He indicated that he had reviewed Snyder's medical records. (Id.) Dr. Hutson opined that Snyder "could do no more than sedentary work." (Id. at 762.) Dr. Hutson thought Snyder should have a sit/stand option but did not discuss any limitations on the amount of time Snyder could sit, stand and/or walk. (Id.)

ALJ McNichols defined sedentary work and concluded that Snyder could perform sedentary work. Sedentary work includes sitting except for an occasional amount of standing and walking. The conclusion that Snyder had the ability to sit except for an occasional amount of standing and walking is supported by substantial evidence in the record.

Dr. Sheridan, who conducted the most recent orthopedic examination of Snyder, performed several tests and concluded that Snyder could perform sedentary work. This

conclusion is supported by Dr. Hutson's testimony, which is based upon a review of the Snyder's medical records. Finally, Snyder' testimony that she could not do a job where she would be sitting most of the time does not preclude standing or walking occasionally, and she testified that she could stand and walk occasionally.

## Conclusion Regarding Sedentary Work

ALJ McNichols' conclusion that Snyder could perform sedentary work is supported by substantial evidence. The record includes substantial evidence that she could lift up to 10 pounds and there is substantial evidence that she could sit with occasional walking and standing.

## Residual Functional Capacity Limitations

Residual functional capacity is defined as "the most you can still do despite your impairments." 20 C.F.R. §§ 404.1545 and 416.945(a)(1). At the final hearing, ALJ McNichols identified several limitations to sedentary work for Snyder. (A.R. 1111-12.) Each will be examined to see whether it is supported by substantial evidence in the record.

### 1. No Climbing of Ropes, Ladders or Scaffolds

On June 3, 2003, Dr. Bennett indicated that Snyder was extremely limited in the functions of pushing/pulling, bending, reaching, handling and repetitive foot movements. (A.R. 307-08.) On July 14, 2004, Dr. West indicated that Snyder was extremely limited in the functions of bending, reaching and repetitive foot movements. (AR 538-39.)

On September 1, 2005, Dr. Vitols indicated that standing, walking, postural activities and pushing/pulling were impacted by Snyder's impairments. (Id. at 597-601.) He also indicated that Snyder should never climb, balance, stoop, crouch, kneel or crawl. (Id.) Finally, Dr. Vitols indicated that exposure to heights is restricted as a result of Snyder's limitations. (Id. at 600.)

On December 20, 2005, Dr. Sheridan indicated that Snyder should never climb, balance, stoop, crouch, kneel or crawl. (Id. at 662.) He also indicated that Snyder had environmental restrictions for heights, moving machinery and vibration. (Id.)

On June 12, 2006, Dr. Hutson, the medical expert who had reviewed Snyder's medical records, indicated that Snyder could perform sedentary work except no ladders, ropes or scaffolds. (Id. at 763.) Thus, there is substantial evidence in the record that Snyder should have been restricted to no climbing of ropes, ladders or scaffolds.

**2. Occasional Bending, Squatting, Stooping, Kneeling, Crouching and Crawling**

As indicated above, on June 3, 2003, Dr. Bennett indicated that Snyder was extremely limited in the functions of pushing/pulling, bending, reaching, handling and repetitive foot movements. (Id. at 307-08.) On July 14, 2004, Dr. West indicated that Snyder was extremely limited in the functions of bending, reaching and repetitive foot movements, was markedly limited in the functions of reaching and handling and was not limited in the functions of seeing, hearing and speaking. (Id.) On September 1, 2005, Dr. Vitols indicated that Snyder should never climb, balance, stoop, crouch, kneel or crawl. (Id. at 599.)

On October 2, 2005, June 12, 2006 and April 22, 2010, Snyder testified that she could climb steps. (Id. at 729, 756, 1103.) On October 2, 2005, she testified that she swept, mopped and washed clothes. (Id. at 730.) On April 22, 2010, Snyder testified that she did not sweep, mop or vacuum. (Id. at 1104.) On that same day, Snyder was asked if she could bend over. She responded, if "there was something where I could hold onto it to come back up." (Id. at 1108.) On December 20, 2005, Dr. Sheridan indicated that Snyder should never climb, balance, stoop, crouch, kneel or crawl.

ALJ McNichols believed that it was absurd to think that an individual such as Snyder would never do any stooping at all in carrying out the routine duties of daily living. (Id. at 792.) However, pursuant to a question by Snyder's counsel, the Vocational Expert opined that 3,500 jobs in the regional economy could be performed even with a "no stooping" whatsoever limitation. (Id. at 1114.) Thus, even if the limitation should have been "no stooping," there were still an adequate number of jobs available in the local economy.

### 3. No Exposure To Extremes of Hot, Cold, or Humidity

On September 1, 2005, Dr. Vitols indicated that Snyder was not restricted in exposure to chemicals, temperature extremes, dust, noise, fumes and humidity. (Id. at 600.) Dr. Sheridan indicated that Snyder had no environmental restrictions for temperature extremes or humidity. (Id. at 662.) Yet, on June 10, 2006, Dr. Hutson testified that Snyder should avoid concentrated exposure to cold, heat, wetness, humidity, vibration and heights or hazardous areas. (Id. at 763.)

Dr. Hutson, the testifying Medical Expert, examined Snyder's medical records, including the findings by Drs. Vitols and Sheridan, and concluded that Snyder should avoid concentrated exposure to, among other things, cold, heat, and humidity. Thus, there is substantial evidence in the record that Snyder should conservatively have been restricted to no exposure to extremes of hot, cold or humidity.

### 4. No Exposure To Hazards Such as Dangerous Machinery Or Unprotected Heights Or Vibrations[3]

On September 1, 2005, Dr. Vitols indicated that Snyder should never be exposed to heights and moving machinery. (Id. at 600.) As indicated above, on December 20, 2005, Dr.

---

[3]ALJ McNichols listed "no exposure to vibrations" as a separate limitation in his May 2010 Order.

Sheridan indicated that Snyder had environmental restrictions for heights, moving machinery and vibration. Also, Dr. Hutson testified that Snyder should avoid concentrated exposure to cold, heat, wetness, humidity, vibration and heights or hazardous areas. Thus, there is substantial evidence that Snyder should have been restricted to no exposure to hazards such as dangerous machinery or unprotected heights or vibrations.

### 5. Simple One- or Two-Step Tasks Requiring Little, If Any, Concentration

On March 22, 2005, Dr. Rogers, Snyder's treating pain management specialist, indicated that Snyder could demonstrate reliability but could not sustain attention and concentration on her work to meet normal standards of work productivity and work accuracy. (Id. at 581-87.) He did, however, feel that Snyder could maintain concentration and attention for extended periods of approximately 2-hour segments. (Id.)

On January 27, 2003, psychologist Dr. Payne examined Snyder. (Id. at 270-74.) He diagnosed major depression, recurrent and panic disorder without agoraphobia of moderate severity. (Id.) He concluded that Snyder was capable of following moderately complex task related instructions. (Id.)

Dr. Rogers is a pain management specialist and, as such, is not qualified to offer psychiatric opinions. Dr. Payne, however, is qualified to offer psychiatric opinions. Thus, there is substantial evidence in the record that Snyder should have been restricted to simple one- or two-step tasks requiring little, if any, concentration.

### 6. No Repetitive Twisting At the Waist

As indicated above, on June 3, 2003, Dr. Bennett indicated that Snyder was extremely limited in the functions of pushing/pulling, bending, reaching, handling and repetitive foot

movements. (Id. at 307-08.) Dr. Vitols indicated that Snyder should never climb, balance, stoop, crouch, kneel or crawl. (Id. at 599.) Dr. Sheridan also indicated that Snyder should never climb, balance, stoop, crouch, kneel or crawl.

All of the actions described by Drs. Bennett, Vitols and Sheridan, would involve twisting at the waist. Thus, there is substantial evidence that Snyder should have been restricted to no repetitive twisting at the waist. This is further supported by the discussion above regarding occasional bending, squatting, stooping, kneeling, crouching and crawling.

### 7. Opportunity To Alternate Between Sitting and Standing as Needed

On October 3, 2005, and again on April 22, 2010, Snyder testified that she could not sit for a long period of time. (Id. at 729.) On June 12, 2006, Dr. Hutson, the medical expert who had reviewed Snyder's medical records, indicated that Snyder should have an option to sit or stand while remaining at the work station. (Id. at 762.) Thus, there is substantial evidence in the record, including Snyder's own testimony, that she should have the opportunity to alternate between sitting and standing as needed.

### 8. Occasional Exposure To the General Public

Both Drs. Bennett and West found that Snyder was not limited in seeing, hearing or speaking. (Id. at 307-08, 538-39.) On March 22, 2005, Dr. Rogers, Snyder's pain management specialist, opined that Snyder was markedly limited in her social functioning. (Id. at 587.)

Dr. Payne diagnosed major depression, recurrent and panic disorder without agoraphobia of moderate severity. (Id. at 270-74.) He concluded that Snyder's ability to relate to others would be moderately impaired and that she was markedly impaired in her ability to withstand the stress and pressures of day to day work activity. (Id.) If she were working alone, her impairment would

17

be moderate. (Id.)

Thus, there is substantial evidence in the record that Snyder should be limited in her exposure to the general public. This is not the specific limitation identified by ALJ McNichols. ALJ McNichols limited Snyder to occasional exposure. However, there is also evidence in the record that, even if Snyder was further limited to no exposure to the public, sufficient jobs in the regional economy would remain. (Id. at 1114.)

### Conclusion On Functional Capacity Limitations

There is substantial evidence in the record that supports six of the eight functional limitations identified by ALJ McNichols. Further, even if more severe limitations were placed on Snyder for the remaining two, sufficient jobs in the regional economy would still exist.

### Determination of Disability

An individual can only be found disabled for Social Security purposes, if the individual is "unable to do any substantial gainful activity due to any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1527(a). The impairment "must result from… abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnosis techniques." Id. To determine if an individual is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

In this case, there is substantial evidence regarding ALJ McNichols' findings regarding the first four steps of the required sequential evaluation process. Snyder has not engaged in substantial gainful activity. Snyder suffers from one or more severe impairments. Snyder's

severe impairments considered alone or in combination do not meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments. And, Snyder cannot perform her past relevant work.

Step Five of the sequential evaluation process requires the Commissioner to determine if, considering Snyder's age, education, past work experience and residual functional capacity, she can perform other work available in the national economy. As more fully explained above, there is substantial evidence from which ALJ McNichols could determine that Snyder was capable of sedentary work with the limitations he identified or, in two cases, more severe limitations. Further, there is substantial evidence that the Vocational Expert considered Snyder's age, education and past work experience along with the sedentary requirement and limitations identified by ALJ McNichols, or in two cases, more severe limitations, and concluded that a sufficient number of jobs existed in the regional economy that Snyder could perform. Thus, there is substantial evidence in the record that supports ALJ McNichols' conclusion that Snyder was not disabled.

## Analysis of Issues Raised By Snyder

Snyder raised issues for review in both of her appeals. Each of these issues will be addressed seriatim.

### First Appeal

In her first appeal, Snyder identified two issues for review. First, is whether the finding that Snyder could perform other work was in error because Social Security Rulings recognize that not being able to bend or stoop is a significant erosion of the sedentary occupational base. However, while Social Security Ruling 96-9p indicates that a total ban on stooping ordinarily

represents a significant erosion of a sedentary occupational base, a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate to a decision that the individual is disabled. This issue is without merit.

In this case, there is substantial evidence that the ability to do less than a full range of sedentary work does not equate to a decision that Snyder is disabled. The decision that Snyder was capable of performing sedentary work with certain limitations is supported by substantial evidence as more fully discussed above.

The second issue identified by Snyder in her first appeal is whether ALJ McNichols' RFC findings are supported by substantial evidence particularly when Dr. West, Snyder's treating physician, believed that Snyder was disabled. However, the ultimate decision as to whether Snyder was disabled for Social Security purposes is not for Dr. West to make. It is, of course, a decision to be made by the Commissioner. However, the Commissioner must give some consideration to the medically supportable restrictions identified by Dr. West and others. This issue, too, is without merit.

Snyder identifies several such restrictions in her Statement of Specific Errors. *Snyder v. Commissioner,* No. 3:08-cv-014, doc. #7. Each of them is addressed above in the section where ALJ McNichols' limitations are reviewed. Six of ALJ McNichols' limitations are supported by substantial evidence in the record and more restrictive limitations for the remaining two still resulted in a significant number of available jobs in the local economy.

## Second Appeal

In her second appeal, Snyder identified three issues for review. (Doc. #8.) The first is whether ALJ McNichols' finding concerning residual functional capacity is supported by

substantial evidence where Snyder's treating physicians found limitations inconsistent with an ability to sustain even sedentary work. The limitations found by Snyder's treating physicians are identified and considered under the sedentary work analysis above. As determined above, there is substantial evidence in the record that Snyder could perform sedentary work. This issue, too, is without merit.

The second issue identified by Snyder in her second appeal is whether ALJ McNichols' finding concerning Snyder's residual functional capacity is in error as a matter of law since ALJ McNichols expressly only considered whether the opinions of her treating physicians deserved controlling weight. According to Snyder, if the opinions of her treating physicians are not given controlling weight, then all opinions must be weighed under a number of factors including: examining relationship, treatment relationship (including the length, nature and extent of the treatment relationships), supportability, consistency and specialization. This issue, too, is without merit.

Evidence of disability may include medical opinions. 20 C.F.R. § 404.1527(a)(2). Every medical opinion in evidence is to be considered. Id. at (d). Unless a treating source's opinion is given controlling weight, the following factors are used to decide what weight is to be given: examining relationship, treatment relationship including the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency and specialization. Id.

In his May 2010 opinion, ALJ McNichols gave little-to-no weight to Dr. Bennett's opinion. Dr. Bennett's opinion was filled out on prescription pad paper on which she wrote that Snyder was permanently disabled by osteoarthritis and ALJ McNichols noted that Dr. Bennett

was Snyder's primary care physician. (AR 790.) ALJ McNichols gave little-to-no weight to this opinion because Dr. Bennett has no specialization, because it was not supported by any detailed medical data, because the overall conclusion is not consistent with other substantial evidence and because it appeared to have been issued in order for Snyder to obtain a handicap placard. (Id. at 791.) As for the other medical source opinions, ALJ McNichols indicated that the medical source opinions considered in conjunction with the earlier hearing decision "continue to be given the weight previously indicated for the same reasons." (Id.)

In the earlier hearing decision, ALJ McNichols determined that the opinions of Drs. Bennett, West, Rogers and Vitols, Snyder's treating physicians, as to Snyder's employability could not be given controlling weight or even great weight because they are not well-supported by medically-acceptable clinical and laboratory diagnostic techniques and because they were inconsistent with other substantial evidence in the record. (Id. at 35.) ALJ McNichols noted that Dr. West's opinions were only supported by a medical history and not by "signs or findings," and that they were inconsistent with the medical expert's evaluation of Snyder. (Id.) ALJ McNichols gave little weight to Dr. Rogers' opinion of Snyder's mental limitations because Dr. Rogers lacked the specialization to evaluate other mental impairments, because Dr. Rogers provided no supporting evidence to corroborate the indicated inabilities and degree of limitation and because Dr. Rogers' opinion is contrary to that of the BDD Psychological Consultant's opinion. (Id.) Finally, ALJ McNichols gave little-to-no weight to Dr. Vitols' assessment because it was contrary to that of Dr. Hutson, because Dr. Vitols' objective and clinical test results did not reveal abnormalities or impairment that would account for a "disabling" degree of functional limitation. (Id.) Finally, throughout both of his opinions, ALJ McNichols identified and

discussed the examining relationship, treatment relationship and specialization of each of Snyder's treating physicians. (Id. at 19-39, 783-93.)

The third issue identified by Snyder in her second appeal is whether ALJ McNichols' finding that Snyder could perform other work was in error because the Vocational Expert testimony is not substantial evidence to support this finding. The Vocation Expert testimony is not substantial evidence, according to Snyder, because her testimony contradicts Social Security's own rules. Snyder more specifically argues that the Vocational Expert's belief that the sedentary unskilled jobs identified in the Dictionary of Occupational Titles ("DOT") assumed a person could alternate sitting and standing at will renders the Vocational Expert's testimony insubstantial. Snyder also argues that the Vocational Expert's testimony is insubstantial because many of the available jobs identified by the Vocational Expert require that a person be able to understand and carry out detailed instructions as evidenced by a "reasoning level" of two or higher in the DOT while Snyder was limited to simple one- or two-step tasks requiring little, if any, concentration which is a reasoning level of "one" in the DOT. This issue, too, is without merit.

Regarding the sit-stand option, the Vocational Expert's belief, right or wrong, is immaterial. The Vocational Expert identified 7,000 unskilled sedentary jobs in the economy that accommodate a sit/stand option and Snyder has not identified any of these jobs that do not accommodate a sit/stand option.

Regarding the reduced ability to follow-instructions, Snyder confuses the limitation to simple one- or two-step tasks requiring little, if any, concentration identified by ALJ McNichols with the "detailed instructions" identified in the DOT. DOT reasoning level two, which applies

to many of the jobs identified by the Vocational Expert, requires the worker to be able to "apply commonsense understanding to carry out detailed but uninvolved written and oral instructions" and to "deal with problems involving a few concrete variables in or from standardized situations." ALJ McNichols did not limit Snyder to not being able to carry out detailed instructions. He limited Snyder to simple one- or two-step tasks requiring little concentration. He did not limit how detailed the instructions might be for each of the tasks. The limitation limited the number of tasks and the concentration required. It did not limit Snyder's ability to receive instructions on how to perform the tasks.

## Analysis of Magistrate Newman's Findings

In his Report and Recommendations and Supplemental Report and Recommendations, the Magistrate Judge made several findings. Each will be addressed seriatim.

## Dr. West's Findings

The Magistrate Judge first found that ALJ McNichols erred in not giving controlling weight to Dr. West's finding of disability. This finding is without merit.

While Dr. West's ultimate finding of disability may be acceptable for certain situations, it is not acceptable for Social Security benefits. Although the Commissioner must consider opinion evidence, the ultimate issue of whether an individual satisfies Social Security's statutory definition of disability is reserved for the Commissioner and is not made by treating physicians. Social Security Ruling 96-5p; 20 C.F.R. §§ 404.1527 and 416.927.

Looking into the matter further, the Magistrate Judge found that ALJ McNichols rejected Dr. West's opinion because "no signs or findings were provided" on the basic medical form itself. However, ALJ McNichols also rejected Dr. West's opinion because it was inconsistent

with other substantial evidence in the record, to include the report of Dr. Sheridan, who examined Snyder and did extensive testing, and Dr. Hutson, who reviewed Snyder's medical records and testified as the Medical Expert.

Also, while ALJ McNichols may have indicated that he did not consider Dr. West's opinion because "no signs or findings were provided," ALJ McNichols did consider Dr. West's "signs or findings," found in a different report, both in his opinion (AR 26-27) and in his consideration of Snyder's severe impairments (Id. at 23.).

The Magistrate Judge identified "signs or findings" in the record that were provided by Dr. West. (Id. at 508, 518.) The "signs or findings" reported by Dr. West on December 5, 2001, resulted in his impression that Snyder had spinal stenosis, L4-5, and the "signs or findings" reported by Dr. West on January 28, 2004 resulted in his impression that Snyder had degenerative disc disease.

The "signs or findings" reported by Dr. West in 2001 were before he performed the first back surgery. According to ALJ McNichols (Id. at 786) and the record, after the first surgery, Dr. West reported that radiographic studies showed a good fusion and post-surgical result. The "signs or findings" reported by Dr. West in 2004 were before he performed the second back surgery. After the second back surgery, Dr. West reported that Snyder "was doing fairly well, complaining of back pain, but no leg pain." (Id. at 27.) And, ALJ McNichols found that one of Snyder's severe impairments was chronic low back pain attributable to degenerative disc disease of the lumbar spine with residuals of two surgeries. (Id. at 23.)

The Magistrate Judge points to Dr. West's review of multiple MRIs and CT scans showing serious spinal impairments, such as spinal stenosis, disc desiccation, diffuse end-plate

spurring, disc bulging, scar tissue, post-laminectomy syndrome and degenerative disc disease and Dr. West's observations of Snyder while performing surgery. However, all of these findings do not necessarily result in a disability for Social Security purposes.

**Weighing of Opinions**

The Magistrate Judge's second finding is that ALJ McNichols failed to apply the factors in determining what weight to give the disability findings of Drs. Bennett and Rogers. However, as more fully set forth above, ALJ McNichols did not fail to apply the factors in determining what weight to give the disability findings of Drs. Bennett and Rogers.

**What To Do?**

The Magistrate Judge's third finding is that reversal is warranted and this matter should be remanded for an award of benefits. However, reversal is not warranted. ALJ McNichols applied the correct legal criteria and there is substantial evidence in the record to support ALJ McNichols' findings.

Further, "a judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994)(citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). In this case, there is not overwhelming proof of disability or even strong proof of disability with evidence to the contrary lacking. With this, the Magistrate Judge agrees.

**Conclusion**

As required by 28 U.S.C. §636(b) and Federal Rules of Civil Procedure Rule 72(b), the District Judge has made a thorough de novo review of the record in this case including the record

from Snyder's previous appeal, the record from this appeal, The Magistrate Judge's Report and Recommendations and Supplemental Report and Recommendations and the objections to both. Based upon this review, the Court finds that ALJ McNichols applied the correct legal criteria and there is substantial evidence in the record to support ALJ McNichols' conclusions. Therefore, ALJ McNichols' decision that Snyder is not disabled and, therefore, not entitled to Social Security disability benefits is AFFIRMED.

The Commissioner objected to the award of benefits in the Report and Recommendations and Snyder objected to the remand instead of an award of benefits in the Supplemental Report and Recommendations. The Court declines to adopt The Magistrate Judge's Report and Recommendations and Supplemental Report and Recommendations. The Objections thereto are overruled if not moot. Finally, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Thirteenth Day of March, 2012.

.                                              **s/Thomas M. Rose**

                                        _____
                                        JUDGE THOMAS M. ROSE
                                        UNITED STATES DISTRICT COURT

Copies furnished to:
        Counsel of Record